## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAMANEISHA WALKER, | ) | Civil Division |
| | ) | |
| Plaintiff, | ) | No. 2:20-cv-1629 |
| v. | ) | |
| | ) | |
| DIALAMERICA MARKETING, INC. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

AND NOW COMES  Plaintiff Damaneisha Walker ("Plaintiff"), by and through her undersigned counsel, and brings this Complaint seeking legal and equitable relief for unlawful sexual harassment, assault, hostile work environment, retaliation, and wrongful termination against Defendant DialAmerica Marketing, Inc. ("DialAmerica" or "Defendant") in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as well as pendent state law claims arising under the provisions of the laws of this Commonwealth, to wit, the Pennsylvania Human Relations Act, 42 P.S. § 951, et seq. (hereinafter referred to as "PHRA"), stating as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1391.  This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII") and the PHRA.

2.      The unlawful employment practices and sexual harassment were committed by the Defendants in Green Tree, Pennsylvania, where Plaintiff worked for Defendant in or around Allegheny County, Pennsylvania.  Therefore, the United States District Court for the Western

District of Pennsylvania is the proper venue for the action under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §1391(b).

3.      Plaintiff timely exhausted her administrative remedies by filing a charge on January 28, 2020 with the United States Equal Employment Opportunity Commission ("EEOC") at Charge No. 533-2020-00878.  Plaintiff's Charge is incorporated by reference as if fully set forth herein. On July 29, 2020, the EEOC mailed Plaintiff a Dismissal and Notice of Rights letter (the "Right to Sue" letter) advising her of the right to bring this action.  Plaintiff has filed the instant suit within 90 days of receipt of the Right to Sue letter.

4.      Defendant is an employer within the meaning of Title VII.

## PARTIES

5.      Plaintiff is a 31-year-old female individual who resides at 90 East Crafton Ave, Crafton, Pennsylvania.

6.      At all relevant times hereto, Defendant is a privately-owned domestic call center with offices throughout the country, including 2 Parkway Center, 2nd Floor, Suite 200, Green Tree, Pennsylvania.

## FACTS

7.      Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

8.      Plaintiff was hired by DialAmerica on October 22, 2019 and was employed by the Company until December 21, 2019.

9.      During her employment at DialAmerica, Ms. Walker completed all job functions, roles and responsibilities of a Customer Service Representative in at least a satisfactory manner, often exceeding expectations.  Ms. Walker had never received a negative performance evaluation,

letter of concern, or disciplinary action with the exception of a retaliatory warning she was given for allegedly being unprofessional on a call.

10.     This one and only warning coincidently occurred on the day Ms. Walker complained to upper management about the repeated sexual harassment she was forced to endure at DialAmerica.

11.     Nonetheless, during the course of her employment at DialAmerica, Ms. Walker was subjected by DialAmerica, through the actions of namely Tyrone Turner, a fellow co-worker, to a hostile work environment, including ongoing sexual harassment.

12.     When Ms. Walker began her employment at DialAmerica she underwent a training class that was taught by her supervisor, Brenda Montrose.  Along with Ms. Walker, Leal Jackson and Tyrone Turner also attended the training class at DialAmerica.

13.     From the onset of Ms. Walker's training, fellow employee Tyrone Turner openly sexually harassed Ms. Walker without any intervention by Ms. Montrose or any other DialAmerica management.

14.     During the training classes, Ms. Walker was told by Mr. Turner that "her ass was fat" and that he "wanted to see how her pussy felt."  Mr. Turner made comments like this to Ms. Walker on a daily basis at DialAmerica.

15.     Ms. Walker first reported Mr. Turner's behavior to Ms. Montrose on or around October 22, 2019.  Ms. Montrose failed to take any action against Mr. Turner and failed to report this complaint by Ms. Walker to DialAmerica management.

16.     Mr. Turner's crude sexual comments continued, and Ms. Walker reported Mr. Turner's behavior to Ms. Montrose on three (3) other occasions. Despite Ms. Walker's further

reports of sexual harassment, Ms. Montrose failed to take any measures to investigate Ms. Walker's complaints.

17.     The sexual harassment escalated to physical assault on or around November 18, 2019.  While Ms. Walker was on the phone with a client, Mr. Turner continued to antagonize Ms. Walker with crude sexual comments.  Having reached her breaking point with Mr. Turner's completely inappropriate behavior, Ms. Walker told Mr. Turner to "stop fucking talking to [her.]" It was at this point that Mr. Turner became so enraged that he threw an object at Ms. Walker nearly striking her.  Mr. Turner then stood up from his chair and got in the face of Ms. Walker asking her if she wanted to "fight him."  Mr. Turner then told her that he would be waiting for her at the bus stop that night after her shift ended.  Fearful of her life, Ms. Walker was forced to take an Uber to her home, because fellow co-worker, Leal Jackson, informed her that Mr. Turner was in fact waiting for her at the bus stop.

18.     On November 19, 2020, the morning after the assault, Ms. Walker was still shaken and immediately reported the incident to Senior Manager Westley Craig.  Having been frustrated by the lack of action by Ms. Montrose despite Ms. Walker's numerous complaints, Ms. Walker felt like she had no other choice but to reach out to upper management.

19.     During that conversation on November 19, 2020, Mr. Craig informed Ms. Walker that Ms. Montrose had not reported any of Ms. Walker's complaints to him and Mr. Craig subsequently had Ms. Walker complete a written statement detailing the sexual harassment by Mr. Turner.

20.     Later that day, in a clear act of retaliation, Ms. Montrose informed Ms. Walker that she was being given a final warning for being unprofessional on a call with a client.  Ms. Walker had no prior warnings or disciplinary action while employed at DialAmerica.

21.     As a result of the continuous and escalating sexual harassment, assault, and hostile work environment described in the forgoing non-exhaustive summary, and despite Ms. Walker's numerous positive contributions to DialAmerica as a Customer Service Representative, Ms. Walker eventually reached her breaking point.

22.     DialAmerica unlawfully permitted the sexual harassment of, and subsequent retaliation against, Ms. Walker to occur, which resulted in physical manifestations of stress, depression and anxiety, and made the work environment so unbearable that Ms. Walker had no other choice but to resign on December 21, 2019.

23.     The Company's leadership and employees, specifically Ms. Montrose, allowed Ms. Walker to be sexually harassed for months, which eventually resulted in assault and threats of other physical violence, and failed to remedy the horrific, unlawful and harassing conduct by a DialAmerica employee towards her.

24.     The stress from the sexual harassment and threats of physical violence that Plaintiff was forced to endure while employed at DialAmerica caused her to suffer a miscarriage on December 15, 2019.

25.     Plaintiff continues to suffer from significant mental and physical symptoms as a result of the sexual harassment, retaliation and hostile treatment to which the DialAmerica had subjected her including but not limited to anxiety, stress, and depression, PTSD.

26.     Plaintiff's stress, anxiety and depression developed as a result of the egregious discrimination, retaliation, sexual harassment and hostile work environment to which Mr. Turner and Defendant had subjected Plaintiff during her employment at DialAmerica.

27.     At all times relevant hereto, Defendant was Plaintiff's employer, and was an employer within the meaning of and subject to anti-discrimination and anti-retaliation statutes.

28.     Plaintiff is in a protected class under Title VII and the PHRA at the time the acts of discrimination and retaliation occurred.

29.     At all relevant times hereto, DialAmerica acted or failed to act by and through its duly authorized agents, servants, and employees, who conducted themselves within the scope and course of their employment.

## COUNT I
## TITLE VII VIOLATION – HOSTILE WORK ENVIORNMENT AND SEXUAL DISCRIMINATION

30.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

31.     At all times relevant, Defendant was an "employer" within the meaning of Section 701(b) of Title VII.

32.     Plaintiff was subjected to a hostile work environment and was intentionally discriminated against on the basis of her sex, in violation of Title VII.

33.     Moreover, the discriminatory conduct and sexual harassment to which Plaintiff was subjected, as described above, was pervasive and regular.

34.     The discriminatory conduct and sexual harassment to which Plaintiff was subjected, as described above, has caused Plaintiff substantial harm, including but not limited to emotional distress, mental anguish, anxiety, humiliation, embarrassment, pain and suffering, discomfort and inconvenience. In addition, Defendant's failure to maintain a workplace free of sexual harassment and failure to take prompt remedial action to address the hostile work environment to which Plaintiff was subjected has caused Plaintiff to suffer medical expenses and a loss of earnings.

35.     The discriminatory conduct and sexual harassment to which Plaintiff was subjected, as described above, would have detrimentally affected a reasonable person in Plaintiff's position.

36.     Defendant knew or should have known about the discriminatory conduct and sexual harassment which Plaintiff was subjected and failed to take appropriate remedial action.

37.     Defendant's failure to maintain a workplace free of sexual harassment and a failure to take prompt remedial action to address the hostile work environment to which Plaintiff was subjected was intentional, malicious and in reckless indifference to Plaintiff's protected federal rights.

38.     As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages asset forth herein.

39.     Defendant's egregious and deplorable treatment of Plaintiff throughout her career at DialAmerica constitutes conduct and employment practices made illegal under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a)(1), and the Pennsylvania Human Relations Act.

40.     Defendant's conduct described above had the purpose and effect of depriving Plaintiff of the rights enjoyed by individuals outside her protected class and, therefore, was in violation of Title VII and the PHRA.

41.     As a direct and proximate result of the discrimination, disparate treatment, sexual harassment, retaliation and hostile work environment which Plaintiff suffered while employed by Defendant, Plaintiff became physically and mentally unable to continue to work at DialAmerica as the hostile work environment had become so severe and pervasive.

42.     As a direct and proximate result of the discrimination, disparate treatment, sexual harassment, retaliation and hostile work environment which Plaintiff suffered while employed by

Defendant, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and potential lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, and pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she has suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

### COUNT II
### PHRA – DISCRIMINATION, RETALIATION and HOSTILE WORK ENVIRONMENT

43.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length

44.     This is an action arising under the provisions of the laws of the PHRA and this Honorable Court has, and should, exercise pendent jurisdiction over the same because the cause of action set forth in this COUNT II arises out of the same facts, events and circumstances as in the above COUNT I, and therefore judicial economy and fairness dictate that this COUNT II be brought in this same Complaint.

45.     At all times relevant, Defendant was an "employer" within the meaning of Section 954(b) of the PHRA.

46.     By engaging in the creation and fostering of a sexually hostile work environment, Defendant violated Section 955(a) of the PHRA which prohibits discrimination and harassment based upon sex with regard to the continuation and tenure of employment.

47.     Plaintiff was subjected to a hostile work environment and was intentionally discriminated against on the basis of her sex, in violation of the PHRA.

8

48.     The discriminatory conduct and sexual harassment which Plaintiff was subjected, as described above, was pervasive, severe and regular.

49.     The discriminatory conduct and sexual harassment which Plaintiff was subjected, as described above, has caused Plaintiff substantial harm, including but not limited to emotional distress, mental anguish, anxiety, humiliation, embarrassment, pain and suffering, discomfort and inconvenience. In addition, Defendant's failure to maintain a workplace free of sexual harassment and its failure to take prompt remedial action to address the hostile work environment to which Plaintiff was subjected has caused Plaintiff to suffer a loss of earnings and medical expenses.

50.     The discriminatory conduct and sexual harassment to which Plaintiff was subjected, as described above, would have detrimentally affected a reasonable person in Plaintiff's position.

51.     Defendant knew or should have known about the discriminatory conduct and sexual harassment to which Plaintiff was subjected and failed to take appropriate remedial action.

52.     Defendant's failure to maintain a workplace free of sexual harassment and a failure to take prompt remedial action to address the hostile work environment which Plaintiff was subjected was intentional, malicious and in reckless indifference to Plaintiff's protected state rights.

53.     Plaintiff engaged in a protected activity as described by Section 955(d) of the PHRA, which includes the opposition of any practice forbidden by the PHRA or the making of a charge under the PHRA.

54.      Defendant was aware of Plaintiff's protected activity as Plaintiff complained multiple times to her supervisor, Ms. Montrose, and DialAmerica management about the ongoing

discrimination, retaliation, sexual harassment and hostile which she suffered at the hands of Mr. Turner.

55.     Plaintiff suffered an adverse employment action, in that Defendant accused her of misconduct to substantiate otherwise unjustifiable discipline, immediately after Plaintiff reported to DialAmerica's upper management the history of discrimination, hostile work environment and sexual harassment against Plaintiff, which eventually resulted in a wrongful termination, via a constructive discharge, as the work environment for Plaintiff had become so hostile, severe and pervasive that any reasonable person would not be able to tolerate such horrific working conditions for the extended period of time which Plaintiff had endured.

56.     Defendant's retaliatory conduct towards Plaintiff as a result of her engaging in a protected activity remains a violation of the PHRA.

57.     Defendant's retaliatory conduct toward Plaintiff was intentional, malicious and in reckless indifference to Plaintiff's protected state rights.

## **DEMAND FOR JURY**

WHEREFORE, Plaintiff demands judgment against Defendants, and damages in excess of $75,000 as follows:

a.  That Plaintiff be awarded actual and consequential damages to make Plaintiff whole including back pay with prejudgment interest, front pay and compensation for lost benefits, in an amount to be proven at trial, and other affirmative relief necessary to eradicate the effects of Plaintiff's damages associated with Defendant's discrimination, retaliation, sexual harassment and hostile treatment of Plaintiff pursuant to Title VII and PHRA, plus interest;

b.  That Plaintiff be awarded compensatory damages to compensate for all costs associated with the discrimination, retaliation, sexual harassment and hostile work environment including lost wages and medical expenses;

c.  That Plaintiff be awarded nominal damages;

d.  That Plaintiff be awarded punitive damages in an amount sufficient to punish Defendant for its intentional, wanton and malicious conduct and to deter similar misconduct;

e.  That Plaintiff be awarded the costs of this litigation, including reasonable attorney's fees; and

f.  That Plaintiff be awarded such further relief as deemed to be just and proper.

Date:   October 27, 2020

Respectfully Submitted,


*/s/ Brian P. Benestad*
Brian P. Benestad, Esquire
Pa. I.D. 208857
HKM EMPLOYMENT ATTORNEYS LLP
220 Grant Street
Suite 401
Pittsburgh, PA  15219
412.485.0133
bbenestad@hkm.com

**JURY TRIAL DEMANDED**